## IN THE DISTRICT COURT OF COMANCHE COUNTY
## STATE OF OKLAHOMA



STATE OF OKLAHOMA
Comanche County
FILED in the
Office of the Court Clerk

MAR 0 6 2023

By _____
Deputy

(1) **KENT WILLIAMS as Personal**
   **Representative of the ESTATE**
   **OF ISRAEL WILLIAMS,**

   **Plaintiff,**

vs.                                                    **Case No.: CJ-2022-613**

(1) **CITY OF LAWTON,**
(2) **JAMES SMITH individually**
   **and in his official capacity,**
(3) **TERRY SELLERS, individually**
   **and in his official capacity,**
(4) **TIMOTHY SCANLON,**
(5) **NATASCHA BATES,**
(6) **WYATT CARTER,**
(7) **JEREMY KINMAN,**
(8) **RONNIE WATKINS,**
(9) **CASSIDY STAVELY,**
(10) **STEPHEN SCHWENDER,**
(11) **TIKA FISHER, and**
(12) **IAN DRUCE,**

   **Defendants.**

## AMENDED PETITION

COMES NOW, Kent Williams, as Personal Representative of the Estate of Israel Williams, for his causes of action against Defendants City of Lawton ("Lawton"), James Smith, individually and in his official capacity as the Chief of Police for the City of Lawton (collectively "Smith"), Terry Sellers, individually and in his official capacity as Jail Administrator for the Lawton City Jail (collectively "Sellers"), Timothy Scanlon ("Scanlon"), Natascha Bates ("Bates"), Wyatt Carter ("Carter"), Jeremy Kinman ("Kinman"), Ronnie Watkins ("Watkins"), Cassidy Stavely ("Stavely"), Stephen Schwender ("Schwender"), Tika Fisher ("Fisher"), and Ian Druce ("Druce").

EXHIBIT 4
Page 1 of 31

## JURISDICTION AND VENUE

1. This matter arises out of the death of Israel Williams in the Lawton City Jail on June 10, 2021. All relevant events took place in Comanche County.

2. This Court has jurisdiction over the subject matter of this case and has jurisdiction over the parties hereto.

3. Israel Williams was a citizen and resident of Comanche County at the time of his death and his Estate is located in Comanche County.

4. Plaintiff, Kent Williams, is the duly-appointed Personal Representative of the Estate of Israel Williams as set out in Comanche County case number PB-2022-39.

5. Defendant Lawton is an Oklahoma municipality and operates the Lawton City Jail.

6. Defendant Smith is the Chief of Police for the Lawton, and exercises oversight authority and final policymaking decisions over the Lawton City Jail at the times relevant to this matter.

7. Defendant Sellers is the Jail Administrator for Lawton, and exercises oversight authority and final policymaking decisions over the Lawton City Jail at the times relevant to this matter.

8. Defendant Scanlon was an officer of the Lawton Police Department serving as a jailer at the Lawton City Jail at the times relevant to this matter.

9. Natascha Bates was an officer of the Lawton Police Department serving as a jailer at the Lawton City Jail at the times relevant to this matter.

10. Wyatt Carter was an officer of the Lawton Police Department serving as a jailer at the Lawton City Jail at the times relevant to this matter.

11. Jeremy Kinman was an officer of the Lawton Police Department serving as a jailer at the Lawton City Jail at the times relevant to this matter.

12. Defendant Watkins was an officer of the Lawton Police Department serving as a jailer at the Lawton City Jail at the times relevant to this matter.

**EXHIBIT 4**
Page 2 of 31

13. Defendant Stavely was an officer of the Lawton Police Department serving as a jailer at the Lawton City Jail at the times relevant to this matter.

14. Defendant Schwender was an officer of the Lawton Police Department serving as a jailer at the Lawton City Jail at the times relevant to this matter.

15. Defendant Fisher was an officer of the Lawton Police Department serving as a jailer at the Lawton City Jail at the times relevant to this matter.

16. Defendant Druce was an officer of the Lawton Police Department serving as a jailer at the Lawton City Jail at the times relevant to this matter.

## COMPLIANCE WITH THE OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT, 51 O.S. §§ 151, *et seq.*

17. The facts giving rise to this claim occurred on June 9th and 10th of 2021.

18. Plaintiff served a Tort Claim Notice to the City of Lawton on April 26, 2022.

19. Plaintiff also served a Tort Claim Notice to the Lawton City Jail on April 25, 2022.

20. Plaintiff also served a Tort Claim Notice to the Lawton Police Department on April 25, 2022.

21. At the earliest, Plaintiff's Tort Claim was deemed denied on July 24, 2022.

22. Plaintiff is now filing this action within 180 days of the date the claim was deemed denied.

## FACTUAL BACKGROUND

1. At approximately 12:45 a.m. on June 9, 2021, Israel Williams was arrested for costs owed on prior trespassing and resisting arrest charges by Lawton Police.

2. At approximately 1:02 a.m. on June 9, 2021, Israel was booked into the Lawton City Jail.

3. During his booking, Israel informed Defendants Watkins, Schwender, Scanlon, and other jailers that he was diabetic and needed his insulin or he would die in the jail.

4. During booking, Israel was lethargic and unresponsive to officers' questions including while a Lawton Police officer was slapping him in the face. Finally, after another officer performed a sternum rub, Israel woke up.

EXHIBIT 4
Page 3 of 31

5. Rather than address the obvious medical issue presented by Israel's statement that he was diabetic and needed insulin and the fact that he appeared to briefly be unresponsive/unconscious in the booking area and required a sternum rub to wake up, jailers simply noted his physical condition as "UNCOOPERATIVE" and his mental status as "UNCOOPERATIVE" rather than documenting the clear signs of medical distress Israel was already showing.

6. Israel's diabetes was noted on the medical information section of his booking sheet.

7. Around 1:05 a.m., June 9, 2021, Israel was placed in a cell without any medical examination, was not provided any insulin or other diabetes medication, and his blood sugar was not checked.

8. Despite his serious medical condition, and the jail staff's awareness of his condition, Israel was not placed on any type of frequent observation, was not referred to a qualified medical provider, nor transferred to an outside facility where he could receive care for his diabetes-related decline.

9. Instead, Israel was only scheduled to be checked on hourly.

10. No medical intake or evaluation was completed for Israel at all.

11. At approximately 2:22 a.m., on June 9, 2021, Defendant Scanlon performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

12. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Scanlon did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

EXHIBIT 4
Page 4 of 31

13. At approximately 3:25 a.m. on June 9, 2021, Defendant Schwender performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

14. Jailers were clearly aware of Israel's decline at this point, as Defendants Schwender and Scanlon had to mop his cell to clean up vomit and/or diarrhea at approximately 3:30 a.m. on June 9th.

15. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Scanlon and Schwender did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

16. At approximately 4:00 a.m. and/or 4:30 a.m. on June 9, 2021, Defendants Scanlon and Schwender performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

17. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Scanlon and Schwender did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

18. At approximately 5:00 a.m. on June 9, 2021, jailers served breakfast to inmates, including Williams. Williams' condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting intermittently, and diarrhea.

EXHIBIT 4
Page 5 of 31

19. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, jailers did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

20. Also at approximately 5:00 a.m. on June 9, 2021, Defendants Scanlon and Schwender performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

21. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Scanlon and Schwender did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

22. Also at approximately 5:50 a.m. on June 9, 2021, Defendants Scanlon and Schwender performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

23. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Scanlon and Schwender did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

24. Between 5:52 a.m. and 5:59 a.m. on June 9, 2021, jail staff provided medications to two other inmates, but still did not provide Israel any medication, insulin, check his blood sugar levels,

EXHIBIT 4
Page 6 of 31

or take him to a medical facility where he could be given his insulin.

25. At approximately 6:30 a.m. on June 9, 2021, Defendants Scanlon and Schwender performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

26. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Scanlon and Schwender did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

27. At approximately 7:00 a.m. on June 9, 2021, Defendants Stavely and Druce performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

28. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Stavely and Druce did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

29. At approximately 7:45 a.m. on June 9, 2021, Defendants Stavely and Druce performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

30. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe

EXHIBIT 4
Page 7 of 31

symptoms and declining condition, Stavely and Druce did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

31. At approximately 8:30 a.m. on June 9, 2021, Defendants Stavely and Druce performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

32. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Stavely and Druce did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

33. At approximately 9:00 a.m. on June 9, 2021, Defendants Stavely and Druce performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

34. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Stavely and Druce did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

35. At approximately 9:30 a.m. on June 9, 2021, Defendants Stavely and Druce performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was

EXHIBIT 4
Page 8 of 31

obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

36. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Stavely and Druce did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

37. The morning of June 9, 2021, Israel's mother called the Lawton City Jail and informed them that Israel was diabetic and needed his insulin.

38. At approximately 10:05 a.m. on June 9, 2021, jailers had to bring Israel clean clothes due to his vomiting and diarrhea; yet despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, these jailers did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

39. At approximately 10:20 a.m. on June 9, 2021, Israel was brought before the municipal court via video. During that court appearance, Israel informed the judge, and the detention officers in the room, that he had diabetes, needed his insulin, and that he was going to die in the jail.

40. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, these jailers did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

41. At approximately 11:15 a.m. on June 9, 2021, jailers served lunch to inmates. Williams' condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was

EXHIBIT 4
Page 9 of 31

vomiting intermittently, and had diarrhea.

42. Still, jailers did not provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

43. At approximately 11:30 a.m. on June 9, 2021, Defendant Giles performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

44. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Giles did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

45. At approximately 12:00 p.m. on June 9, 2021, Defendant Giles performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

46. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Giles did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

47. At approximately 1:08 p.m. on June 9, 2021, Defendant Giles performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

EXHIBIT 4
Page 10 of 31

48. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Giles did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

49. Between 1:08 p.m. and 1:11 p.m. on June 9, 2021, jail staff provided medications to two other inmates, but still did not provide Israel any medication, insulin, or take him to a medical facility where he could be given his insulin.

50. At approximately 2:25 p.m. on June 9, 2021, Defendant Giles performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

51. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Giles did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

52. At approximately 3:07 p.m. on June 9, 2021, Defendant Kinman performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

53. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Kinman did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

54. At approximately 4:51 p.m. on June 9, 2021, Defendant Kinman performed an hourly sight

EXHIBIT 4
Page 11 of 31

check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

55. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Kinman did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

56. At approximately 5:15 p.m. on June 9, 2021, Defendant Kinman performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

57. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Kinman did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

58. At approximately 6:55 p.m. on June 9, 2021, Defendant Kinman performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

59. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Kinman did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

60. At approximately 7:55 p.m. on June 9, 2021, Defendant Kinman performed an hourly sight

EXHIBIT 4
Page 12 of 31

check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

61. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Kinman did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

62. In the evening of June 9, 2021, jailers served dinner to inmates, including Williams. Williams' condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting intermittently, and had diarrhea.

63. At approximately 8:35 p.m. on June 9, 2021, Defendant Kinman performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

64. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Kinman did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

65. Between 8:45 p.m. and 8:54 p.m. on June 9, 2021, jail staff provided medications to two other inmates, but still did not provide Israel any medication, insulin, or take him to a medical facility where he could be given his insulin.

66. At approximately 9:15 p.m. on June 9, 2021, Defendant Kinman performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and

EXHIBIT 4
Page 13 of 31

had diarrhea.

67. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Kinman did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

68. At approximately 10:19 p.m., on June 9, 2021, jailers moved Israel from cell # 19 to cell # 20 so that they could clean the vomit and diarrhea from Israel's time in cell # 19.

69. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, these jailers did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

70. At approximately 10:35 p.m. on June 9, 2021, Defendant Kinman performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

71. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Kinman did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

72. At approximately 11:00 p.m. on June 9, 2021, Defendant Bates performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

73. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe

EXHIBIT 4
Page 14 of 31

symptoms and declining condition, Bates did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

74. At approximately 12:00 a.m. on June 10, 2021, Defendant Bates performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

75. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Bates did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

76. At approximately 1:00 a.m. on June 10, 2021, Defendant Bates performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

77. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Bates did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

78. At approximately 2:00 a.m. on June 10, 2021, Defendant Bates performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

79. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe

EXHIBIT 4
Page 15 of 31

symptoms and declining condition, Bates did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

80. At approximately 3:00 a.m. on June 10, 2021, Defendant Bates performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

81. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Bates did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

82. At approximately 4:00 a.m. on June 10, 2021, Defendant Bates performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

83. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Bates did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

84. At approximately 5:00 a.m. on June 10, 2021, jailers served breakfast to inmates, including Williams. Williams' condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting intermittently, and had diarrhea.

85. Also at approximately 5:00 a.m. on June 10, 2021, Defendant Bates performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in

EXHIBIT 4
Page 16 of 31

decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

86. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Bates did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

87. Between 5:49 a.m. and 5:52 a.m. on June 10, 2021, jail staff provided medications to two other inmates, but still did not provide Israel any medication, insulin, or take him to a medical facility where he could be given his insulin.

88. At approximately 6:00 a.m. on June 10, 2021, Defendant Bates performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

89. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Bates did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

90. At approximately 7:00 a.m. on June 10, 2021, Defendants Allen, Stavely, and Druce performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

91. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Allen, Stavely, and Druce did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a

EXHIBIT 4
Page 17 of 31

qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

92. At approximately 8:00 a.m. on June 10, 2021, Defendants Allen, Stavely, and Druce performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

93. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Allen, Stavely, and Druce did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

94. At approximately 9:00 a.m. on June 10, 2021, Defendants Allen, Stavely, and Druce performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

95. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Allen, Stavely, and Druce did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

96. At approximately 10:30 a.m. on June 10, 2021, Defendant Stavely performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

EXHIBIT 4
Page 18 of 31

97. Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Stavely did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

98. At approximately 11:00 a.m. on June 10, 2021, jailers served lunch to inmates, including Williams. Williams' condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting intermittently, and had diarrhea.

99. Also at approximately 11:00 a.m. on June 10, 2021, Defendants Stavely, and Druce performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

100.     Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Stavely and Druce did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

101.     At approximately 12:00 p.m. on June 10, 2021, Defendant Allen performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

102.     Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Allen did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

EXHIBIT 4
Page 19 of 31

103.    At approximately 1:00 p.m. on June 10, 2021, Defendants Allen and Stavely performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

104.    Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Allen and Stavely did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

105.    At approximately 2:00 p.m. on June 10, 2021, Defendants Allen and Stavely performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

106.    Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Allen and Stavely did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

107.    At approximately 2:45 p.m. on June 10, 2021, Defendants Allen and Stavely performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

108.    Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Allen and Stavely did nothing to provide Israel any

EXHIBIT 4
Page 20 of 31

medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

109.    At approximately 3:15 p.m. on June 10, 2021, Defendants Kinman and Carter performed an hourly sight check. By this time, Israel was clearly in medical distress and his condition was obviously in decline by this point, as he appeared lethargic, was nauseous, was vomiting repeatedly, and had diarrhea.

110.    Despite knowledge of Israel's diabetes and need for insulin, as well as his obvious severe symptoms and declining condition, Kinman and Carter did nothing to provide Israel any medication, insulin, check his blood sugar levels, check his vital signs, refer him to a qualified medical provider, or take him to a medical facility where he could be checked out and given insulin.

111.    At approximately 4:40 p.m. on June 10, 2021, Israel was found unresponsive in his cell and clearly in medical distress. He was still laying in the floor halfway under his bunk, with vomit still in the cell toilet.

112.    Jail staff called for fire and ambulance and Israel was pronounced dead at the jail at 5:15 p.m., on June 10, 2021.

113.    Jail staff and jail officials were wholly aware of Israel's lethargy, nausea, vomiting, and diarrhea prior to his death as they reported that information to the Medical Examiner's office in their investigation of Israel's death.

## CAUSES OF ACTION

### COUNT I – NEGLIGENCE (WRONGFUL DEATH)

(Against Defendant Smith, officially and individually; Defendant Sellers, officially and individually; Defendants Watkins, Scanlon, Schwender, Fisher, Kinman, Payton, Giles,

EXHIBIT 4
Page 21 of 31

Bates, Allen, Stavely, Druce, and Carter)

114. Defendant Lawton had a duty to provide necessary medical care to Israel Williams while detained in the Lawton City Jail.

115. Defendant Lawton was negligent in failing to provide obviously needed medical care to Israel Williams during the day and a half he laid dying in the Lawton City Jail.

116. Defendant Smith, in his official capacity and individually, had a duty to provide necessary medical care to Israel Williams while detained in the Lawton City Jail.

117. Defendant Smith, in his official capacity and individually, was negligent in failing to provide obviously needed medical care to Israel Williams during the day and a half he laid dying in the Lawton City Jail.

118. All of Smith's acts and omissions were performed under color of law and within the course and scope of his employment with the City of Lawton.

119. Defendant Sellers, in his official capacity and individually, had a duty to provide necessary medical care to Israel Williams while detained in the Lawton City Jail.

120. Defendant Sellers, in his official capacity and individually, was negligent in failing to provide obviously needed medical care to Israel Williams during the day and a half he laid dying in the Lawton City Jail.

121. All of Sellers' acts and omissions were performed under color of law and within the course and scope of his employment with the City of Lawton.

122. Defendants Watkins, Scanlon, Schwender, Fisher, Kinman, Payton, Giles, Bates, Allen, Stavely, Druce, and Carter had a duty to provide necessary medical care to Israel Williams while detained in the Lawton City Jail.

123. Defendants Watkins, Scanlon, Schwender, Fisher, Kinman, Payton, Giles, Bates, Allen, Stavely, Druce, and Carter were negligent in failing to provide obviously needed medical

EXHIBIT 4
Page 22 of 31

care to Israel Williams during the day and a half he laid dying in the Lawton City Jail.

124.    All of Defendants Watkins Scanlon, Schwender, Fisher, Kinman, Payton, Giles, Bates, Allen, Stavely, Druce, and Carter's acts and omissions were within the course and scope of their employment with the City of Lawton.

125.    In the alternative, Smith's act and omissions were done willfully, wantonly, and/or in bad faith such that he was outside the course and scope of his employment with the City of Lawton, and outside any purported immunity provided by the GTCA.

126.    In the alternative, Sellers' acts and omissions were done willfully, wantonly, and/or in bad faith such that he was outside the course and scope of his employment with the City of Lawton, and outside any purported immunity provided by the GTCA.

127.    In the alternative, Defendants Watkins Scanlon, Schwender, Fisher, Kinman, Payton, Giles, Bates, Allen, Stavely, Druce, and Carter's acts and omissions were done willfully, wantonly, and/or in bad faith such that they were outside the course and scope of their employment with the City of Lawton, and outside any purported immunity provided by the GTCA.

128.    As a result of these negligent acts and omissions, Israel Williams suffered substantial conscious physical and mental pain and suffering, loss of chance of survival, and death.

## COUNT II - NEGLIGENT HIRING, TRAINING, RETENTION, AND/OR SUPERVISION

**(Against Defendant Smith, officially and individually, and Defendant Sellers, officially and individually)**

129.    Defendants Smith and Sellers, both in their official and individual capacities, had a duty to refrain from hiring employees who they knew would present an unreasonable risk of harm to detainees within the Lawton City Jail, including Israel Williams.

130.    Defendants Smith and Sellers, both in their official and individual capacities, violated

EXHIBIT 4
Page 23 of 31

this duty through the hiring of Defendants Watkins Scanlon, Schwender, Fisher, Kinman, Payton, Giles, Bates, Allen, Stavely, Druce, and/or Carter.

131.      Defendants Smith and Sellers, both in their official and individual capacities, had reason to know that Defendants Watkins Scanlon, Schwender, Fisher, Kinman, Payton, Giles, Bates, Allen, Stavely, Druce, and/or Carter presented an unreasonable risk of harm to detainees within the Lawton City Jail, including Israel Williams, based on their prior acts and/or omissions.

132.      Defendants Smith and Sellers, both in their official and individual capacities, had a duty to provide sufficient training and any necessary retraining to Defendants Watkins Scanlon, Schwender, Fisher, Kinman, Payton, Giles, Bates, Allen, Stavely, Druce, and/or Carter to ensure they did not present an unreasonable risk of harm to detainees within the Lawton City Jail, including Israel Williams.

133.      Defendants Smith and Sellers, both in their official and individual capacities, violated this duty by failing to train Defendants Watkins Scanlon, Schwender, Fisher, Kinman, Payton, Giles, Bates, Allen, Stavely, Druce, and/or Carter on their obligations to either provide necessary emergency medical care to inmates, provide them prescribed medications, refer them to a qualified medical provider, or transfer them to an outside medical facility for necessary medical care.

134.      Defendants Smith and Sellers, both in their official and individual capacities, had a duty not to retain employees who they knew presented an unreasonable risk of harm to detainees within the Lawton City Jail, including Israel Williams.

135.      Defendants Smith and Sellers, both in their official and individual capacities, violated this duty through the retention of Defendants Watkins Scanlon, Schwender, Fisher, Kinman, Payton, Giles, Bates, Allen, Stavely, Druce, and/or Carter, when Defendants Smith and Sellers

EXHIBIT 4
Page 24 of 31

each had reason to know those employees presented an unreasonable risk of harm to inmates such as Israel Williams.

136.     Defendants Smith and Sellers, both in their official and individual capacities, had a duty to supervise Defendants Watkins Scanlon, Schwender, Fisher, Kinman, Payton, Giles, Bates, Allen, Stavely, Druce, and/or Carter to ensure they properly provided medication, medical attention, access to a qualified medical provider, and/or transfer to an outside medical facility to inmates who have obvious, serious, emergent medical needs, including Israel Williams.

137.     Defendants Smith and Sellers, both in their official and individual capacities, violated this duty to supervise those employees to ensure they properly provided medication, medical attention, access to a qualified medical provider, and/or transfer to an outside medical facility to inmates who have obvious, serious, emergent medical needs, including Israel Williams, because they had reason to know that such employees were failing to provide such medical care prior to the detention of Israel Williams, and during the detention of Israel Williams but prior to his death.

138.     As a result of these negligent acts and omissions, Israel Williams suffered substantial conscious physical and mental pain and suffering, loss of chance of survival, and death.

**COUNT III - DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS – 42 U.S.C. § 1983**

**(Against Defendants Scanlon, Schwender, Fisher, Kinman, Payton, Giles, Bates, Allen, Stavely, Druce, and Carter)**

139.     Plaintiff incorporates all allegations above as if fully restated herein.

**Objective Component**

140.     As to the claims against each individual in this section, the objective component of the

EXHIBIT 4
Page 25 of 31

deliberate indifference standard has been met as Israel was known to be suffering from a serious medical condition diagnosed by a physician and because the harm suffered by Israel – death, severe conscious pain and suffering, and fear of eminent death – are objectively serious harms.

### Subjective Component

141.     As to the claims against each individual in this section, the subjective component of the deliberate indifference standard has been met as each Defendant had specific knowledge that Israel was diabetic, that he needed insulin, that no one had provided him any medication or insulin during the entirety of his detention prior to his death, that Israel's condition was severely and dangerously declining as they each knew he was lethargic, was nauseous, was vomiting repeatedly, and had diarrhea; yet each Defendant chose not to provide any medication to Israel, made no attempts to check his blood sugar levels, made no attempt to check his vital signs, made no attempt to refer him to a qualified medical provider and made no attempt to transfer him to an outside medical facility.

142.     Instead, Defendants chose to ignore Israel's symptoms and severe condition and not obtain or provide any medical care to Israel as a result of their deliberate indifference to his medical needs.

143.     As a result of these deliberately indifferent acts and omissions, Israel Williams suffered substantial conscious physical and mental pain and suffering, loss of chance of survival, and death.

### COUNT IV - DELIBERATELY INDIFFERENT POLICIES, PROCEDURES CUSTOMS, TRAINING AND SUPERVISION IN VIOLATION OF 42 U.S.C. § 1983

**(Against Defendants City of Lawton, Smith, individually and officially, and Sellers, individually and officially)**

144.     Defendants City of Lawton, Smith, in his individual and official capacities, and Sellers,

EXHIBIT 4
Page 26 of 31

in his individual and official capacities, maintained policies, procedures, and/or customs within the Lawton City Jail which directly resulted in the death of Israel Williams.

145.    Each of those policies, procedures, and/or customs were created or continued by Defendants City Defendants City of Lawton, Smith, in his individual and official capacities, and Sellers, in his individual and official capacities, with deliberate indifference to the threat such policies, procedures, and customs posed to the health and safety of detainees within the Lawton City Jail.

146.    Defendants City of Lawton, Smith, in his individual and official capacities, and Sellers, in his individual and official capacities, were aware that their employees within the Lawton City Jail, including Defendants Watkins Scanlon, Schwender, Fisher, Kinman, Payton, Giles, Bates, Allen, Stavely, Druce, and/or Carter, were not properly trained to perform medical intakes of detainees, to identify serious medical conditions/symptoms which require emergency medical care, to provide emergency medical care to detainees, to refer detainees with serious medical needs to a qualified medical provider, or to transfer detainees with emergent medical needs to an outside medical facility capable of providing the needed care.

147.    Despite their knowledge of the lack of proper and necessary training, Defendants City of Lawton, Smith, in his individual and official capacities, and Sellers, in his individual and official capacities, did nothing to provide training or retraining to those employees with deliberate indifference to the risk such lack of training posed to the health and safety of detainees within the Lawton City Jail, including Israel Williams.

148.    Defendants City of Lawton, Smith, in his individual and official capacities, and Sellers, in his individual and official capacities, were aware that their employees within the Lawton City Jail, including Defendants Watkins Scanlon, Schwender, Fisher, Kinman, Payton, Giles, Bates, Allen, Stavely, Druce, and/or Carter, were not properly performing their duties

EXHIBIT 4
Page 27 of 31

pertaining to performing medical intakes of detainees, identifying serious medical conditions/symptoms which require emergency medical care, providing emergency medical care to detainees, referring detainees with serious medical needs to a qualified medical provider, or transferring detainees with emergent medical needs to an outside medical facility capable of providing the needed care prior to the death of Israel Williams.

149.    Despite this knowledge of those employees' failures and the risk such failures pose to the health and safety of detainees within the Lawton City Jail, Defendants City of Lawton, Smith, in his individual and official capacities, and Sellers, in his individual and official capacities, took no steps to supervise those employees to present the known risks such failures posed to the health and safety of detainees within the Lawton City Jail.

150.    Defendants City of Lawton, Smith, in his individual and official capacities, and Sellers, in his individual and official capacities, made the decision not to provide supervision to these employees known to be failing to perform their critical duties properly, with deliberate indifference to the effect such failure to supervise posed to the health and safety of detainees within the Lawton City Jail.

151.    As a result of these deliberately indifferent acts and omissions, Israel Williams suffered substantial conscious physical and mental pain and suffering, loss of chance of survival, and death.

## CAUSATION OF PLAINTIFFS' INJURIES AND DAMAGES

152.    Plaintiff incorporates all previous allegations and statements as if fully restated herein.

153.    The injuries and damages sustained by Israel Williams, and his heirs, were produced in a natural and continuous sequence from defendants' violation of one or more of the above describe independent constitutional and/or state law duties.

EXHIBIT 4
Page 28 of 31

154.     The injuries and damages sustained by Israel Williams, and his heirs, were a probable consequence from Defendants' violation of one or more of the above-described independent duties.

155.     Defendants should have foreseen and anticipated that a violation of one or more of the above-described independent duties would constitute an appreciable risk to harm of others, including Israel Williams and her heirs.

156.     If Defendants had not violated one or more of the above-described independent duties, then Israel Williams' death and damages, and the damages of his heirs, would not have occurred.

### COMPENSATORY DAMAGES SUSTAINED BY PLAINTIFF

157.     Plaintiff incorporates all previous allegations and statements as if fully restated herein.

158.     The injuries and damages sustained by Israel Williams as a result of the Defendants' violations include but are not limited to the following:

   a.   Israel Williams' physical pain and suffering;

   b.   Israel Williams' mental pain and suffering;

   c.   Israel Williams' age;

   d.   Israel Williams' physical condition immediately before and after the incident;

   e.   The nature and extent of Israel Williams' injuries;

   f.   Loss of earnings; and,

   g.   The reasonable expenses of the necessary medical care.

159.     The Plaintiff's injuries and damages include all wrongful death damages pursuant to 12 O.S. § 1053, including but not limited to: (1) medical and burial expenses, (2) loss of consortium and grief, (3) mental pain and anguish of the decedent, (4) conscious pain and suffering of the decedent, and (5) grief and loss of companionship to children and parents of

EXHIBIT 4
Page 29 of 31

the decedent.

160.     Plaintiff seeks all damages available under federal and state law for the claims alleged

herein.

## AMOUNT OF DAMAGES

161.     The Plaintiff's injuries and damages are in excess of $5,000,000.00 ($5 million) and in

excess of the amount required for diversity jurisdiction under 28 U.S.C. § 1332 (currently

$75,000.00), plus attorney fees, interest, costs and all such other and further relief for which

should be awarded as judgment against Defendants in an amount to fully and fairly

compensate Plaintiffs for each and every element of damages that has been suffered.

## PUNITIVE DAMAGES

162.     Plaintiff incorporates all previous allegations and statements as if fully restated herein.

163.     Plaintiff is entitled to punitive damages on claims brought against individual

Defendants pursuant to 42 U.S.C. § 1983 as Defendants' conduct, acts, and omissions alleged

herein constitute reckless or callous indifference to Israel Williams' federally protected rights.

164.     Plaintiff is entitled to punitive damages on claims brought against individual

Defendants on state law claims where said individual Defendants were acting outside the scope

of their employment, as Defendants' conduct, acts, and omissions alleged herein constitute

reckless or callous indifference to Israel Williams' protected rights.

165.     Plaintiff is entitled to punitive damages on all other claims pursuant to 12 O.S. § 1053.

## JURY TRIAL DEMANDED

166.     Plaintiff demands a jury trial for all issues of fact presented by this action.

## RESERVATION OF ADDITIONAL CLAIMS

167.     Plaintiff reserves the right to plead further upon completion of discovery to state

additional claims and to name additional parties to this action.

EXHIBIT 4
Page 30 of 31

WHEREFORE, Plaintiff prays for judgment against Defendants in a sum in excess of $5,000,000.00 ($5 million), in excess of the amount required for diversity jurisdiction under 28 U.S.C. § 1332 (currently $75,000.00) plus interest, costs, attorneys' fees, punitive damages, and all such other relief as to which Plaintiff may be entitled.

Respectfully Submitted,

Laird Hammons Laird, PLLC

**ATTORNEY LIEN CLAIMED**

Chris Hammons, OBA #20233
Jason M. Hicks, OBA #22176
Jonathan Ortwein, OBA #32092
1332 S.W. 89th Street
Oklahoma City, OK 73159
Telephone: 405.703.4567
Facsimile: 405.703.4067
E-mail:    chris@lhllaw.com
           jason@lhllaw.com
           jonathan@lhllaw.com

and

Bret Burns, OBA #15675
Burns Law Firm
519 W. Chickasha Ave.
Chickasha, OK 73018
Telephone: 405.320.5911
E-mail:    bret.burns@ymail.com
*Attorneys for Plaintiff*

EXHIBIT 4
Page 31 of 31